```
01
02
03
04
05
06
07                        UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
08                                  AT SEATTLE

09   JEAN M. JAMES,                      )  CASE NO. C04-2455-MJB
                                         )
10          Plaintiff,                   )
                                         )
11      v.                               )  MEMORANDUM OPINION
                                         )
12   JO ANNE B. BARNHART, Commissioner   )
     of Social Security,                 )
13                                       )
            Defendant.                   )
14   _____ )
```

Plaintiff Jean M. James proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration ("Commissioner"). After a hearing before an Administrative Law Judge ("ALJ"), the Commissioner denied Plaintiff's application for Disability Insurance Benefits ("DIB") pursuant to 42 U.S.C. §423 of the Social Security Act ("the Act"). Having considered the ALJ's decision, the administrative record (Tr.), and all memoranda of record, the Court hereby REVERSES and REMANDS for further proceedings.[1]

I.  FACTS AND PROCEDURAL HISTORY

Plaintiff initially applied for both retirement benefits and for DIB in July 2000. Although she became entitled to retirement benefits, her application for DIB was

---

[1] Pursuant to the consent of the parties, this case has been referred to the undersigned in accordance with 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and Local Rule MJR 13.

MEMORANDUM OPINION
PAGE -1

denied, and she did not appeal.  Plaintiff again applied for DIB on March 20, 2001, alleging the same disability onset date of April 1, 1999, due to back pain that restricted her ability to lift, push and pull.  In her second application, Plaintiff also alleged limitations based on incontinence and eczema.  Plaintiff's second application was denied on August 17, 2001, and upon reconsideration on June 6, 2002.  Plaintiff filed a request for a hearing, and a hearing was held before ALJ Arthur Joyner on December 18, 2003.  ALJ Joyner took testimony from: (1) the Plaintiff (Tr. 275-318.); (2) medical expert, Kenneth D. Sawyer, M.D., a non-examining, non-treating physician (Tr. 318-320.); and (3) vocational expert Stephen R. Van Hooten.  Tr. 320-324.  The ALJ issued a decision denying Plaintiff benefits on May 15, 2004.  Tr. 19-28. Plaintiff appealed the ALJ's decision to the Appeals Council, which declined to review Plaintiff's claim.  Tr. 7-10.  Plaintiff appealed this final decision of the Commissioner to this Court.

## II.   THE PARTIES' POSITIONS

Plaintiff requests that the Court reverse the Commissioner's decision and award disability benefits, or, in the alternative, remand the case for further proceedings. Plaintiff argues that the ALJ made errors at steps two, four and five of the sequential evaluation process.  The Commissioner asserts that Plaintiff has failed to overcome the presumption of continuing non-disability, and that the ALJ's decision is supported by substantial evidence and should be affirmed.

## III.   JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## IV.   STANDARD OF REVIEW

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the

record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## V.    EVALUATING DISABILITY

A claimant bears the burden of proving that he or she is disabled. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423 (d)(1)(A).

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, the claimant must establish that he or she is not engaging in any substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the claimant must establish that he or she has one or more medically determinable severe impairments or combination of impairments. If the claimant does not have a "severe" impairment, he or she is not disabled. *Id.* at § (c). At step three, the Commissioner will determine whether the claimant's impairment meets or equals any of the listed impairments described in the regulations. A claimant who meets one of the listings is disabled. *See Id.* at § (d).

At step four, if the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner evaluates the claimant's

residual functional capacity and the physical and mental demands of the claimant's past relevant work. *Id.* at § (e). If the claimant is not able to perform his or her past relevant work, the burden shifts to the Commissioner at step five to show that the claimant can perform some other work that exists in significant numbers in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience. *Id.* at § (f); *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner finds the claimant unable to perform other work, then the claimant is found disabled.

## VI.   SUMMARY OF THE RECORD EVIDENCE

Plaintiff was born on XXXX, 1938.[2]  Tr. 38. She completed one year of business college in 1969 and has had some computer training. Tr. 88, 97. Plaintiff previously worked as a waitress, temporary packing worker, document control specialist, and front desk clerk. Tr. 84. Plaintiff was age 62 at the time of this disability application, and was almost 66 at the time of the ALJ's decision.[3]  Plaintiff asserts that limitations relating to back and knee pain, as well as incontinence and eczema, render her disabled. Tr. 22. Other evidence relevant to Plaintiff's allegations is incorporated into the discussion below.

## VII.   THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of April 1, 1999. Tr. 23. At step two, he found Plaintiff's back and knee impairments to be severe. Tr. 24. At step three, the ALJ

---

[2] Plaintiff's date of birth is redacted back to the year of birth in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

[3] Persons born in 1938 attain full retirement age at 65 years and 2 months. 20 C.F.R. § 404.409. Plaintiff's entitlement to retirement benefits is not at issue in this case. However, she seeks disability payments for the period of time between her alleged onset date of April 1, 1999, and the time she became eligible for retirement benefits.

MEMORANDUM OPINION
PAGE -4

found that Plaintiff's impairments did not meet or equal the criteria for any listed impairments. Tr. 25.

The ALJ determined at step four that Plaintiff retained the RFC to perform a limited range of light exertion: she could lift and/or carry a maximum of twenty pounds occasionally and ten pounds frequently; she could stand and/or walk (with normal breaks) for two hours at one time and not more than six hours out of an eight-hour workday; she could sit (with normal breaks) for two hours at one time and not more than six hours out of an eight-hour workday; she could occasionally climb stairs and balance, but she should avoid repetitive pushing or pulling with her lower extremities and bending or stooping; she could occasionally reach overhead, could do handling (gross manipulation) and fingering (fine manipulation); she had no visual, hearing, or speaking limitations and she had no environmental limitations except that she should avoid heights and hazards. Tr. 26.

The ALJ found that Plaintiff's past work as a document control specialist was similar to that of a mortgage clerk, did not require the performance of activities precluded by her RFC, and that her impairments therefore did not prevent her from performing past relevant work. Tr. 27. The ALJ found that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from the alleged onset date through the date of the decision. *Id.*[4]

## VIII.   DISCUSSION

A.   <u>Presumption of Continuing Non-Disability</u>

Plaintiff first filed an application for disability benefits in July 2000. Tr. 22. That application was denied, and Plaintiff did not appeal. The denial became binding when a timely request for reconsideration was not made. 20 C.F.R. § 404.905.

---

[4]Because the ALJ found at step four that Plaintiff was not disabled, he did not address step five of the sequential evaluation process.

Plaintiff filed the instant claim in March 2001. Tr. 22. Under Ninth Circuit law, a previous finding that a Plaintiff is not disabled creates a continuing presumption of non-disability. *See Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1996). The presumption of continuing nondisability may be rebutted only if the Plaintiff can show "changed circumstances." *Id.* The Social Security Administration (SSA) issued a ruling (Acquiescence Ruling 97-4(9)) regarding the presumption of continuing nondisability in a case where a Plaintiff files a new disability claim after a previous application had been denied. This ruling provides:

> When adjudicating the subsequent claim involving an unadjudicated period, adjudicators will apply a presumption of continuing nondisability and determine that the claimant is not disabled with respect to that period, unless the claimant rebuts the presumption. A claimant may rebut the presumption by showing a "changed circumstance" affecting the issue of disability with respect to the unadjudicated period, *e.g.*, a change in the claimant's age category under 20 CFR 404.1563 or 416.963, an increase in the severity of the claimant's impairment(s), the alleged existence of an impairment(s) not previously considered, or a change in the criteria for determining disability.

Acquiescence Ruling ("AR") 97-4(9).

The Commissioner argues that this presumption applies, and that Plaintiff has failed to rebut it. He notes that Plaintiff's previous and current applications for disability allege the same onset date of April 1999, and that her claim is still largely premised on lower back problems. Although Plaintiff included allegations of limitations based on eczema and incontinence in her current claim, the Commissioner asserts that because the ALJ found that Plaintiff failed to substantiate these impairments, Plaintiff has not shown the changed circumstances sufficient to overcome the presumption. In her reply brief, Plaintiff ignores the Commissioner's argument, except to the extent that the Court could construe her comment that "the evidence in the record supports the legitimacy of seven years of 'changing circumstances' of Ms. James' limitations" as an effort in this regard.

A review of the ALJ's decision reveals that he failed to address the presumption of continuing non-disability or changed circumstances, noting only that the claimant had previously filed an application for disability benefits, had not sought review of that denial, and that there was no basis to reopen her initial claim. Tr. 22. The ALJ's failure to address the presumption of continuing non-disability was error, but because the error was in Plaintiff's favor, it is harmless to the Plaintiff. Whatever the Commissioner argues on this point, he urges the Court to affirm the ALJ's ruling.

However, as explained in Section VIII(B) and VIII(D), below, the Court is remanding this case for further proceedings to correct two other errors. Therefore, ALJ is instructed to consider this issue upon remand, and to make specific findings as to whether Plaintiff has overcome the presumption of continuing non-disability.

B.     Severity of Impairments

The step-two inquiry is a *de minimis* screening device to dispose of groundless claims. *See Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987). "If a claimant is unable to show that he has a medically severe impairment, he is not eligible for disability benefits." *Id.* at 148. A claimant's impairment, or combination of impairments, is not severe if it does not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 404.1521(a). Basic work activities are defined as the abilities and aptitudes necessary to do most jobs, such as (1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. *See* 20 C.F.R. §§ 404.1521, 416.921. "An impairment or combination of

impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citations omitted).

In the present case, the ALJ found there was enough medical evidence in the record to support Plaintiff's contention that she suffered from severe back and knee impairments. Tr. 24. However, the ALJ explained that although Plaintiff had been treated for "eczema-like symptoms," he found "no evidence that this problem had any effect on Plaintiff's ability to perform work-related activities." Tr. 24. He therefore declined to find Plaintiff's eczema to be a severe impairment. Tr. 24. The ALJ did not address the issue of Plaintiff's incontinence, effectively rejecting her claim that her incontinence was a severe impairment.

Plaintiff argues that the record supports a finding that both her eczema and her incontinence created severe work-related impairments, and that the ALJ erred at step two in failing to make this determination. With respect to her allegation of incontinence, she argues that the ALJ's failure to make any findings is clear error. She also argues that where there is error in the step two analysis, the remainder of the sequential evaluation process is tainted, and either the ALJ's ruling must be reversed and benefits awarded, or that the action must be remanded for further proceedings.

The Commissioner contends that the ALJ's refusal to find Plaintiff's incontinence and eczema to be severe is supported by substantial evidence. With respect to Plaintiff's skin problems, the Commissioner argues that it is debatable whether the Plaintiff successfully established that she suffers from eczema, because this condition was never diagnosed by a dermatologist. Similarly, with respect to Plaintiff's incontinence, the Commissioner argues that Plaintiff's medical records contain no diagnosis, and therefore, that any error in this regard was harmless.

The Plaintiff presented the following as proof of her impairment due to eczema:

MEMORANDUM OPINION
PAGE -8

- An October 15, 2001 assessment by Erin Rogers, a physician's assistant at Valley Medical Center Covington Primary Care, who noted that Plaintiff had eczema on her hands and behind her ear. (Tr. 225.);

- A November 20, 2001 evaluation by examining physician Raymond West, M.D., who diagnosed Plaintiff with dermatitis, but noted that it was "probably eczema." (Tr. 234.);

- Plaintiff herself testified at the hearing that she had eczema on various parts of her body. (Tr. 301.);

- Plaintiff wrote in her October 9, 2001 Reconsideration Disability Report that her "chronic eczema is particularly bad on [her] left index finger" and that it "can affect [sic] typing." (Tr. 141.);

- Her husband, Reginald James, wrote in his Lay Witness Observation Letter that his wife has a "severe case of eczema." He noted that "It can be anywhere on her body. It itches, cracks, bleeds and is sometimes very painful." (Tr. 168.); and

- Plaintiff's stepdaughter's Lay Witness Observation Letter stated that Plaintiff "has a very bad rash on her face, neck, and hands. I have seen the rash on her hands crack and bleed." (Tr. 164.)

As the Commissioner accurately reports, the evidence does not include a diagnosis of eczema by a dermatologist. Further, neither of the medical reports mentioning Plaintiff's eczema note that she experienced any work-related impairments relating to her skin condition. Tr. 225, 234. Plaintiff's own assertion that eczema on her index finger impacts her ability to type was the only evidence presented of the impact of her eczema on her working life. To satisfy step two's requirement of a severe impairment, a claimant must do more than simply *allege* severity, he or she must prove the physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; a claimant's own statement of symptoms will not suffice. *See* 20 C.F.R. §§ 404.1508, 416.908. Given the lack of medical support for the severity of Plaintiff's impairment due to eczema, it is this Court's opinion that the ALJ's finding that Plaintiff's eczema was not severe was supported by substantial evidence in the record as a whole. *See Penny*, 2 F.3d at 956.

However, the ALJ's complete failure to make any findings with respect to

MEMORANDUM OPINION
PAGE -9

Plaintiff's allegations of an impairment based on incontinence is clear error. When an ALJ rejects a claimant's testimony about the severity of symptoms, the ALJ must offer "specific, clear, and convincing reasons for doing so." *Light v. Social Security Administration*, 119 F.3d 789, 792 (9th Cir.1997) (*citing Smolen*, 80 F.3d at 1281). Without a proper record from the ALJ, the Court is unable to evaluate the reasons for declining to find Plaintiff's incontinence to be a severe impairment. Plaintiff provided evidence of her incontinence in the form of her own testimony (Tr. 279-81.), notes in various medical records (Tr. 190, 218, 227, 230-31, 234.), a lay witness account (Tr. 168.), and paperwork she filled out for Social Security. Tr. 112, 114, 131, 133, 141. While the ALJ might have found Plaintiff's allegations regarding her incontinence to be not credible, or that the medical evidence did not support a finding of severity, he was required to make specific findings which supported his conclusions. *Mersman v. Halter*, 161 F. Supp. 2d 1078, 1085 (N.D. Cal. 2001). The Court instructs the ALJ, upon remand, to make specific findings with respect to the severity to Plaintiff's alleged incontinence.

On a related note, Plaintiff also attacks the sufficiency of the ALJ's finding of "little objective evidence" (Tr. 24.) for Plaintiff's physical impairments, asserting that the ALJ failed to assess the record as a whole. According to Plaintiff, there is a plethora of evidence in the record supporting her claim of disability. The Commissioner believes that the ALJ did properly consider the medical evidence in this case. However, the ALJ's failure to address the issue of Plaintiff's incontinence, which is an impairment that could have a serious impact on Plaintiff's ability to work, suggests to the Court that upon remand, the ALJ must take greater pains to assess the record as a whole. It is important for the ALJ to consider the combined effect of all the claimant's impairments on her ability to function, without regard to whether each alone is sufficiently severe. *See Smolen v. Chater*, 80 F. 3d at 1290.

C.   Credibility

Plaintiff argues that the ALJ improperly dismissed her testimony on the basis that the allegations of her limitations were at odds with the medical evidence, her contemporaneous statements to treating sources, and medical source opinions. Tr. 25. Plaintiff argues that substantial evidence does not support the ALJ's credibility finding, because the ALJ failed to provide clear and convincing reasons to reject her statements. Plaintiff acknowledges that her symptoms waxed and waned, and that this may have contributed to a lack of clarity in her medical records, but contends that a lack of consistent symptoms should not automatically render her testimony unreliable. The Commissioner maintains that the ALJ properly discredited Plaintiff's testimony alleging greater limitations than those the ALJ assessed in his RFC finding.

Absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons to reject a claimant's testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834 (citations omitted). "We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings." *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d at 792.

In this case, the ALJ found Plaintiff's complaints only partially credible:

> The claimant testified that she is disabled because of her constant back pain, she cannot lift objects necessary to complete work duties, she can only walk

MEMORANDUM OPINION
PAGE -11

slowly with a cane, and can only sit for an hour. However, her statements concerning her impairments and their impact on her ability to work are considerably more limited and restricted than is established by the medical evidence, her own contemporaneous statements to treating sources, and medical source opinions. For those reasons, her statements are found to be not entirely reliable. Tr. 25.

The ALJ recounted the medical evidence he found to be at odds with Plaintiff's description of her limitations. Tr. 25-26.

> Dr. Chilczuk noted that claimant, as of two months prior to her January 2002 examination, was walking up to three miles three times a week. She reported to Dr. Majid Azzedine, a psychologist who examined the claimant in June 2001, that she liked to have an active life and enjoyed traveling as she was looking forward to a trip at that time. She also testified that she maintains an active online auction business that involves spending time on the computer, packaging items, and bringing the packaged items to the post office to be shipped . . . The claimant reported to Dr. [Raymond] West [on November 20, 2001] that she could walk a mile[.] (Citations omitted.)
> Tr. 25-26.

The Court finds the ALJ's credibility analysis satisfactory. The ALJ rendered a credibility determination with sufficiently specific findings, supported by substantial evidence. *See, e.g., Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (ALJ may use testimony regarding claimant's daily activities to judge credibility). As such, the ALJ need not revisit the issue of Plaintiff's credibility on remand.

D.   Testimony of Lay Witnesses

Plaintiff submitted lay witness statements from the following people: Pearl E. Blazka, Plaintiff's sister; Michelle Johnson, Plaintiff's daughter; Melodie Mellema, one of Plaintiff's stepdaughter; Kimberly A. Mackey, another stepdaughter; Barbara Gregory, a neighbor and friend; Robert Palfrey, Plaintiff's son; and Reginald D. James, the Plaintiff's spouse. Tr. 162-68. Each of these witnesses provides their own perspective on Plaintiff's physical limitations. The ALJ dismissed all the lay witness statements with one sentence, opining that "as there is a lack of underlying signs or findings to support their statements, they will not be given much weight in the final decision." Tr. 26. The Commissioner argues that the ALJ permissibly concluded,

based on the record as a whole, that the statements of the lay witnesses were not supported, and lacked persuasive force, but the Plaintiff argues that the ALJ improperly rejected this testimony. Plaintiff asserts that the ALJ incorrectly rejected the testimony of all these witnesses with one statement, arguing that he had an obligation to make findings germane to the testimony of each witness. The Court agrees. "[L]ay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). The ALJ failed specifically to mention any of the lay witnesses' statements, let alone provide germane reasons for rejecting them. Upon remand, the ALJ is instructed to make particular findings with respect to each lay witness.

E.  Use of Vocational Expert

At step four of the sequential evaluation process, a vocational expert may be called upon to offer expert opinion testimony in response to a hypothetical question. 20 C.F.R. § 404.1560(b)(2). If an ALJ relies upon vocational expert testimony, the hypothetical questions must be based on medical assumptions supported by substantial evidence in the record that reflects the claimant's limitations. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163 (9th Cir. 2000). At the hearing in this case, vocational expert Stephen R. Van Hooten testified that a hypothetical person with the Plaintiff's age, education, and limitations based upon the Plaintiff's RFC could work as a mortgage clerk, as that job is generally performed in the national economy. Tr. 320-324.

Plaintiff argues that the ALJ made several errors in his reliance on the testimony of the vocational expert. First, Plaintiff argues that when a person between 60 and 64 years of age has a severe impairment, Social Security will not consider the person able to adjust to sedentary or light work unless the person has skills that are

highly marketable. Here, Plaintiff contends that the ALJ erred in failing to make findings to determine if the skills acquired by Plaintiff in her job as a document control specialist were highly marketable as required by 20 C.F.R. § 404.1563(d). The Commissioner effectively rebuts Plaintiff's argument that the ALJ improperly failed to take her age into account. The Commissioner explains that an ALJ does not consider age of the claimant until step five of the sequential evaluation process, a step not reached in this case, and that in any event, this consideration was removed from the regulations as of May 8, 2000. Moreover, The Commissioner has properly stated the current law on this topic. *See* 65 FR 18000.

Second, Plaintiff argues that the ALJ failed to provide the proper limitations in his hypotheticals to the vocational expert, by neglecting to mention that Plaintiff could only occasionally reach overhead. The Commissioner maintains that the ALJ's hypothetical, and the RFC upon which it was based, properly summarized Plaintiff's functional limitations. The Court agrees with the Commissioner on this point. It is true that a hypothetical posed to a vocational expert must include all of the claimant's functional limitations supported by the record. *Thomas*, 278 F.3d at 956 (*citing Flores v. Shalala*, 49 F.3d 562, 520-71 (9th Cir. 1995). But in this case the ALJ was not required to include in his hypotheticals Plaintiff's limitation on reaching overhead, because the Dictionary of Occupational Titles (DOT) description of the position of a mortgage clerk states that such an employee would have to reach overhead only occasionally.

Third, Plaintiff asserts that the ALJ improperly failed to incorporate the testimony of Plaintiff and the lay witnesses into his hypothetical questions to the vocational expert. The Commissioner contends that the ALJ was not compelled to include any testimony he deemed unreliable in his hypotheticals. The Commissioner is correct on this point. When framing hypothetical questions, the ALJ is required to

include only those allegations he finds credible. *Magallanes*, 881 F. 2d at 756-57. Therefore, the Court finds no error in the ALJ's reliance on the testimony of the vocation expert. However, upon reevaluating the evidence regarding plaintiff's incontinence, the ALJ may find it necessary to re-frame his hypothetical questions to Mr. Van Hooten.

## IX.   CONCLUSION

For the reasons described above, this matter is hereby REVERSED and REMANDED for further proceedings. Upon remand, the ALJ is instructed to:

(1) Make specific findings as to whether Plaintiff has overcome the presumption of continuing non-disability;

(2) Make specific findings with respect to the severity to Plaintiff's alleged impairment due to incontinence; and

(3) Make particular findings with respect to each lay witness.

Depending upon the results of his reevaluation of the evidence in this case, the ALJ may need to re-frame his hypothetical questions to the vocational expert.

DATED this 6th day of January, 2006.

_____
MONICA J. BENTON
United States Magistrate Judge